LINDA YORK & another[1] *vs.* RICHARD A. SULLIVAN & others.

Franklin.    October 9, 1975. — December 3, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Consumer Protection Act.    Practice, Civil,* Consumer protection case. *Waiver.*

Upon appeal by the plaintiffs from the judgment in a suit in equity under G. L. c. 93A, the defendants were not entitled to raise as matter of right a claim of exemption not raised by the pleadings or considered by the judge. [161]

Where it appeared in suits in equity against the owners-lessors of a housing development that the defendants had applied to the Department of Housing and Urban Development for approval of an increase in rents, that thereafter the defendants executed one-year leases to the plaintiffs, the rents of which were subject to adjustments on approval of the department, without informing the plaintiffs "that an application for a rent adjustment was then pending," that if the plaintiffs had been so informed they would not have signed the leases, that the application was approved, that before the rent increases became effective a letter was sent to the defendants by the plaintiffs identifying themselves, asserting

---

[1] Douglas Perry.   The named plaintiffs sued on behalf of themselves and all others similarly situated.

they had been "led to believe" the rents were stabilized and alleging unfair and deceptive acts or practices under G. L. c. 93A, by the defendants, it was held that the plaintiffs' letter, the response to which showed that the defendants understood the grievance alleged, complied with the requirement of c. 93A, § 9 (3), of a "written demand for relief" before suit, even though the letter did not mention the defendants' failure to inform the plaintiffs of the pending application. [161-163]

With respect to the written demand for relief which is required by G. L. c. 93A, § 9 (3), as a prerequisite to a suit in equity by a consumer under § 9, the provision of § 9 (3) that such demand shall be mailed or delivered "[a]t least thirty days prior to the filing" of the suit may be waived by a party; it was not open to a judge to raise the question of waiver on his own motion after trial and long after expiration of thirty days. [163-164]

The prerequisite to a suit in equity by a consumer under G. L. c. 93A, § 9, that at least thirty days prior thereto a written demand for relief be mailed or delivered to any prospective defendant, is not a prerequisite to any other remedy available to the consumer. [163-164]

Even if it had been proper to dismiss a suit in equity treated as a suit by a consumer under G. L. c. 93A, § 9, on the ground that the proceeding was begun prematurely before the expiration of thirty days from the mailing or delivery of the required written demand for relief, the dismissal should have been without prejudice and would not have barred an action under § 9 brought by the consumer after the thirty days had run. [164-165]

At a preliminary hearing of a suit in equity against the owners-lessors of a housing development by tenants holding one-year leases and challenging rent increases on the ground they had been "led to believe" the rents would be stable, an offer made by the defendants that any tenant could cancel his lease without penalty and that no tenant would be evicted until the court's decision failed to comply with the formal requirement of G. L. c. 93A, § 9 (3), pertaining to a "tender of settlement" by a recipient of a demand for relief from unfair or deceptive acts or practices, and as matter of law was not "reasonable in relation to the injury" allegedly suffered by the plaintiffs. [165]

BILL IN EQUITY filed in the Superior Court on March 26, 1974.

The suit was heard by *Moriarty,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Steven J. Schwartz* for the plaintiffs.

*Ralph Warren Sullivan* for the defendants.

BRAUCHER, J.   Once again we are called on to rule on the procedure to be followed under G. L. c. 93A, § 9. Cf. *Commonwealth* v. *DeCotis,* 366 Mass. 234 (1974); *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688 (1975); *Entrialgo* v. *Twin City Dodge, Inc.,* 368 Mass. 812 (1975); *Baldassari* v. *Public Fin. Trust, ante,* 33 (1975); see Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L.Q. 307 (1969). We hold that (1) the "written demand for relief" sent to the defendants by the consumer plaintiffs complied with the statute, (2) the plaintiffs did not waive their statutory rights by bringing a nonstatutory action within thirty days after sending that demand, and (3) the defendants did not make a "written tender of settlement" pursuant to the statute.   We therefore reverse the judgment dismissing the action and remand for further proceedings.

We summarize the parties' agreed statement of the case.   See Mass. R. A. P. 8 (d), 365 Mass. 849 (1974). The defendants are the owners, operators and lessors of a federally assisted housing development for low and middle income tenants.   On August 7, 1973, they applied to the Department of Housing and Urban Development (HUD) for an increase in rents by reason of increased taxes and other costs.   Thereafter they executed one-year leases to the two named plaintiffs and others.   The leases contained provisions that the rents were subject to adjustments on approval by HUD, but the tenants were not informed that an application for increase was pending. On January 14, 1974, HUD approved rent increases, and on January 28, 1974, the defendants notified the tenants that increased rents, approved by HUD, would be effective March 1, 1974.

On February 15, 1974, several tenants sent a letter to the defendants alleging unfair and deceptive practices under c. 93A.   The letter identified the two named plaintiffs and asserted that each, when the lease was

signed, was "led to believe" by the defendants' agent that he or she was obligated to pay the monthly rent set forth in the lease for the entire term of one year, subject to adjustment if the tenant's income changed, and that each had later received notice of a rent increase. The letter referred to Regulation XV-B, promulgated by the Attorney General pursuant to G. L. c. 93A, § 2 (c). Under that regulation, there is a violation of § 2 if[2] "B. Any person . . . fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." On February 21, 1974, the defendants replied, refusing all demands for relief.

On February 26, 1974, the two named plaintiffs and a third tenant filed a bill in equity challenging the rent increase on grounds independent of c. 93A and seeking interlocutory relief. At a preliminary hearing on March 5, 1974, the defendants agreed that any tenant could cancel his lease without penalty rather than pay the increased rent and that no tenant would be evicted until a decision was made by the court. On March 26, 1974, the two named plaintiffs filed a second bill in equity under c. 93A. The defendants answered, and the two cases were consolidated for trial and tried on May 27, 1974.

At trial the only factual issue in dispute was whether the tenants had been advised by the defendants' agent that at the time of signing their leases an application for rent increase had been filed and was pending before HUD. The two named plaintiffs testified that they were not informed of the application and that they would not have signed the leases if they had been so informed. The defendants offered no evidence.

---

[2] The record before us does not include the regulations of the Attorney General, and we do not take judicial notice of them. *Diaduk's Case,* 336 Mass. 5, 7 (1957). See G. L. c. 30A, § 5; c. 233, § 75. The portion of Regulation XV-B quoted in the text is taken from the judge's findings and rulings.

On August 8, 1974, after trial, the judge made find-ings, rulings and an order for judgment. He found that the plaintiffs "were not advised when they signed the leases that an application for a rent adjustment was then pending." The judgment in the first action declared that the tenants were obligated to pay the increased rents. The action under c. 93A was dismissed on the merits. The judge ruled that (1) the demand letter did not rea-sonably describe the act or practice relied on, (2) by bringing a bill in equity during the thirty days following the demand letter, the plaintiffs waived their rights under c. 93A, and (3) the defendants' stipulation at the March 5 hearing had the effect of a reasonable tender of settle-ment under G. L. c. 93A, § 9 (3). The plaintiffs ap-pealed from the judgment in the c. 93A action.

1. *Statutory exemption.* The defendants contend that G. L. c. 93A, § 3 (1) (*a*),[3] exempts them from c. 93A. This contention was not raised by the pleadings or con-sidered by the judge. It cannot now be raised as matter of right. *Socony Mobil Oil Co.* v. *Cottle,* 336 Mass. 192, 196 (1957). There is no showing that HUD regu-lates unfair or deceptive failure to disclose material facts to prospective tenants. Cf. *Hahn* v. *Gottlieb,* 430 F.2d 1243, 1247-1248 (1st Cir. 1970). The defendants had the burden of showing the availability of the exemption. G. L. c. 93A, § 3 (2). *Commonwealth* v. *DeCotis,* 366 Mass. 234, 239-240 (1974).

2. *The demand letter.* The judge ruled that the de-fendants' failure to advise the tenants of the pending HUD application was the only act or practice which was "colorably a violation" of c. 93A, and that the plaintiffs' written demand for relief did not mention that act or

---

[3] Section 3 (1) (*a*), inserted by St. 1967, c. 813, § 1, reads: "(1) Nothing in this chapter shall apply to (a) transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the common-wealth or of the United States."

practice and therefore was not one "reasonably describing the unfair or deceptive act or practice relied upon," as required by § 9 (3).[4] The evidence clearly warranted a finding that the disclosure of the application "may have influenced" a prospective tenant "not to enter into the transaction," within the meaning of Regulation XV-B. If such a finding were made, we have no doubt that the failure to disclose would be a deceptive act or practice. Cf. *Commonwealth* v. *DeCotis*, 366 Mass. 234, 241 n.6 (1974).

We think the demand letter was sufficient to give the defendants "an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied" and to enable them to make "a reasonable tender of settlement" in order to limit the recoverable damages. See *Slaney* v. *Westwood Auto, Inc.*,

---

[4] Section 9 (3), inserted by St. 1969, c. 690, provides: "(3) At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section."

366 Mass. 688, 704-705 (1975). In *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812 (1975), a demand letter claimed that a used car was defective and that deceptive representations influenced its purchase; the letter was held insufficient to show reliance on violations of the Truth-in-Lending statutes. In Truth-in-Lending cases the aggrieved consumer commonly knows what has been disclosed, and he can ascertain whether there has been compliance with the governing legal requirements. See *Lynch* v. *Signal Fin. Co. of Quincy*, 367 Mass. 503, 507-508 (1975). Here the demand letter clearly claimed that the tenants had been deceived as to the stability of their rent levels, and the defendants' response shows that they understood the nature of the grievance. The record does not show whether at the time the plaintiffs sent the demand letter they knew the date of the application to HUD. The defendants knew that date and the dates of the plaintiffs' leases. We do not think they could insist that the plaintiffs inform them of facts they had deceptively failed to disclose. Information which serves no useful purpose is not required. Cf. *Baldassari* v. *Public Fin. Trust, ante,* 33, 42 (1975).

3. *Waiver by suit.* The defendants' answer made no claim of waiver, but the judge ruled that a claimant who fails to observe the thirty-day requirement of § 9 (3) should be held to have waived the statutory remedy, and to have elected to pursue his nonstatutory rights, if any, independently of the statute. This was error in three respects.

First, the thirty-day requirement, as part of the requirement of a written demand for relief, is a prerequisite to suit, to be alleged and proved. Cf. *Entrialgo* v. *Twin City Dodge, Inc.,* 368 Mass. 812 (1975). But it is not jurisdictional in the sense that a party cannot waive it, and we do not think it is open to the judge to raise the point on his own motion after trial and long after the thirty days have expired. Demand before suit is often a fruitless ceremony. See *Lent* v. *Padelford,* 10 Mass. 230,

238-239 (1813).  The defendants here had refused all demands for relief.  If they felt unduly hurried in deciding whether to change their minds, a telephone call to the plaintiffs' counsel or an application to the court might well have solved their problem.  In fact they were able to prepare sufficiently to make an offer on March 5, 1974, which resulted in the denial of interlocutory relief.  Cf. *Schulte* v. *Director of the Div. of Employment Security,* ante, 74, 81 (1975).

Second, the thirty-day requirement is a prerequisite to an action under § 9, but nothing in the statute makes it a prerequisite to any other remedy available to aggrieved consumers.  The statute created new rights and remedies for consumers; it was not designed to limit their pre-existing rights and remedies, or to create obstacles to their pursuit.  See *Commonwealth* v. *DeCotis,* 366 Mass. 234, 244 n.8 (1974).  The first suit here was nonstatutory.  "Such claims can be made apart from G. L. c. 93A, § 9, without compliance with the requirements of that section."  *Baldassari* v. *Public Fin, Trust,* ante, 33, 39 (1975).  Cf. *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 461 (1975).  The second suit, based on c. 93A, complied with the thirty-day requirement.

Finally, even if the first suit could be treated as a suit under c. 93A, subject to dismissal because it was begun too soon, such a dismissal should not ordinarily bar a suit brought after the thirty days had run.  See *Wright Mach. Corp.* v. *Seaman-Andwall Corp.,* 364 Mass. 683, 693-694 (1974), and authorities cited; Mass. R. Civ. P. 41 (b) (3), 365 Mass. 803 (1974); cf. *Coyle* v. *Taunton Safe Deposit & Trust Co.,* 216 Mass. 156, 161 (1913); *Cobb* v. *Fogg,* 166 Mass. 466, 477 (1896).  We need not now decide whether, if the point is raised after the thirty days have run, we would insist on dismissal.  Cf. *Tucker* v. *Connors,* 342 Mass. 376, 381-383 (1961); Mass. R. Civ. P. 15 (d), 365 Mass. 761 (1974); *Security Ins. Co.* v. *United States,* 338 F.2d 444, 449 (9th Cir. 1964).  Even

if dismissal were proper, it should not be "on its merits" or "with prejudice."

4. *Tender of settlement.* Under § 9 (3) a person who receives a demand for relief may, within the thirty-day period, make a "written tender of settlement." If the tender is rejected, he "may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner." The defendants made no written tender, they filed no written tender and no affidavit, and they set up no such partial defense in their answer. The judge ruled, however, that the defendants' agreement at the preliminary hearing on March 5, 1974, was "reasonably calculated to relieve the tenants of any substantial actual damages," that it had "the practical effect of giving" them "the opportunity to mitigate their damages," and that it should "be sufficient to limit recovery to the relief offered, if" they "were otherwise entitled to prevail." By reason of his other rulings, however, he dismissed the suit in its entirety.

We disagree with the ruling on the relief offered. The defendants' offer may have been sufficient to eliminate any need for interlocutory relief, but it utterly failed to comply with the formal requirements of § 9 (3). Moreover, it required each tenant to choose among cancelling his lease, paying the increased rent, and risking eviction once the case was decided. As matter of law, such a choice is not "reasonable in relation to the injury." Where the unlawful deceptive practice of a landlord leads a tenant to believe that the rent under a lease will be stable during its one-year term the tenant is entitled to the benefit of the bargain the landlord induced him to think he was making. Cf. *Goldman* v. *Mahony,* 354 Mass. 705, 709-711 (1968); *Rice* v. *Price,* 340 Mass. 502, 506-511 (1960).

5. *Disposition.*   The judgment dismissing the c. 93A action is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*