Spina, J.
This action was tried jury-waived on Count I, alleging fraudulent misrepresentation by the defendant; jury-waived as to the question of damages only on Count II, partial summary judgment having been entered in favor of the plaintiffs on the question of liability under G.L.c. 255, §121 (imposing strict liability for failure to ascertain and disclose the existence of Urea Formaldehyde Foam Insulation (UFFI)); and to the Court, without jury, on issues under G.L.c. 93A. After trial; I find the following facts.
The defendant Sciaba Construction Corp. (“Sciaba”) is a large-scale public works contractor. It built a publicly funded elderly housing project in Dennis, Massachusetts in 1986-1987. It purchased a house at 32 Debbie Lane, in Dennis (“Property”) as temporary housing for its construction workers. The expense to acquire and maintain the Property was incurred as a project cost. Sciaba benefitted directly from this investment because it eliminated travel time to and from Boston for its work crew. Sciaba’s decision to purchase and sell the Property was motivated entirely by business concerns. Sciaba had provided temporary housing to its work crew in the past, but it was with motel accommodations. This was the first time it had ever purchased a house for such purposes.
When Sciaba purchased the Property its building inspector conducted an examination. There was no report of UFFI made at the time. When the housing project was completed, Sciaba placed the house on the market through a local real estate broker. The plaintiffs entered into a purchase and sale agreement for the Property and acquired the home on July 27, 1988. The plaintiffs had their own home inspection done on the Property, and it did not reveal the existence of UFFI.
At the closing Sciaba furnished an affidavit to plaintiffs’ mortgage lender, on the lender’s form and for mortgage lending purposes, attesting to the absence of UFFI in the Property. The affidavit was signed by Sciaba’s president, and given to the attorney for the lender, who was also plaintiffs’ counsel. The plaintiffs did not attend the closing. There was no evidence that Sciaba or its realtor ever told plaintiffs that there was in fact no UFFI in the Property. Partial summary judgment was entered on November 29, 1993 against Sciaba on Count II (liability only) for failure to determine whether UFFI was in the Property, pursuant to G.L.c. 255, §12I.
The plaintiffs began using the Property as their vacation home in August 1988, without incident. They continued to so use the Property every other weekend until the end of October 1988, when Mrs. O’Neil’s face became swollen and red, her eyes were irritated, and she experienced other dermatological problems. The symptoms subsided within a few days of her return to her home in Springfield, Massachusetts.
Mrs. O’Neil experienced the same symptoms when she returned to the Property in November 1988 and in January 1989. Each time the symptoms subsided within approximately two days of her return home. The plaintiffs’ daughter had a similar outbreak when she visited the Property in January 1989.
Mr. O’Neil discovered UFFI in the Property during the spring of 1989 when he removed some shingles from an exterior wall. The presence of UFFI was confirmed by a state-certified UFFI removal specialist.
The plaintiffs use the Property approximately one-third as often as they would like, especially during times requiring closed windows, because of the presence of UFFI. Although it seems that Mrs. O’Neil’s allergy-like symptoms may well be caused by UFFI, *298 there was no evidence offered to establish the requisite causal connection. Formaldehyde and UFFI have been determined to be irritants as well as toxic and hazardous substances. 105 C.M.R. 650.015, .016, .017.
Mrs. O’Neil testified that the fair rental value of the Property is $500 per week and $4,000 for a season, and I so find. However, 1 am not persuaded that the plaintiffs would have ever offered the Property to renters, clearly preferring instead to occupy it themselves as a vacation home.
The plaintiffs engaged the services of an attorney after discovering the presence of UFFI. The attorney sent a demand letter to Sciaba under G.L.c. 93A, §9 on April 10, 1991, demanding that it pay $20,000 to remove the UFFI. That letter contained no information as to the extent of UFFI in the Property, or the basis for the $20,000 demand. A further demand for $1,000 as reimbursement for attorneys fees was made. I find that this 93A demand letter was not sufficiently detailed so as to give Sciaba a basis upon which to make a reasonable tender of settlement. Sciaba’s counsel responded to that demand on May 9, 1991 denying liability but also stating essentially that a full and proper response to the demand could not be made due to the lack of information on the extent of UFFI in the Property. Sciaba was permitted access to the Properly for purposes of determining the extent of UFFI and the removal cost. On June 13, 1991 Sciaba’s counsel wrote to plaintiffs’ counsel and suggested that the UFFI could be removed for approximately $14,000, and invited settlement discussions. The plaintiffs ultimately rejected Sciaba’s offer because its contractors were not certified by the Massachusetts Department of Health to remove UFFI.
DISCUSSION
A. Count I (Misrepresentation)
An action for misrepresentation may be established upon proof of a representation of an existing material fact which is false, with the intent that plaintiff rely thereon, and resulting damage from the reliance. If the fact is asserted, as here, of one’s personal knowledge, and is false, liability is not vitiated by any good faith belief in the accuracy of the assertion or by any lack of intent to deceive. Yorke v. Taylor, 332 Mass. 368 (1955).
The purpose of the certificate of no UFFI was to insulate the plaintiffs’ mortgage lender from liability. See G.L.c. 167, §47; 105 C.M.R. 651.013. The lender has taken no adverse action against plaintiffs since the parties have discovered the UFFI on the Property, and there is no evidence that it will. Although the defendant’s certificate of no UFFI was given to plaintiffs’ mortgage lender for lending purposes, I find that plaintiffs belong to a class of persons who the defendant had reason to expect would rely upon the certificate. The form certificate also provided for the plaintiffs’ signatures, so the information thereon could reasonably be expected to be seen by the plaintiffs. See Restatement, Second, Torts, Sections 531, 533; Nolan and Sartorio, Tort Law, Vol. 37 Massachusetts Practice Series, §144.
There is no evidence that the plaintiffs relied upon defendant’s misrepresentation. See National Shawmut Bank v. Johnson, 317 Mass. 485, 490 (1945). For this reason, the plaintiffs have failed to maintain their common law claim of misrepresentation (deceit) against the defendant. Judgment for the defendant is to enter on Count I of the Complaint.
B. Count II (Negligent Failure to Disclose)
Partial summary judgment, on the issue of liability, has previously been allowed on this Count in favor of the plaintiffs. The sole remaining issue is damages.
The plaintiffs offered no medical evidence causally relating the symptoms manifested by Mrs. O’Neil to exposure to UFFI. The plaintiffs offered evidence of lost rental value of the Property, but I find that it more likely than not that they would have used the Property for a vacation home for themselves, and not as a rental property.
I do find that the plaintiffs have lost a portion of the use and enjoyment of the Property, and that they use the Property only 25% of the available time due to a reasonable apprehension of the harmful effects of UFFI. UFFI has been determined to be an irritant, as well as a toxic and hazardous substance since June 30, 1988. See 105 C.M.R. 650.020. I find that the fair and reasonable value of this loss of use is $2,500 per year for the last 5 years, or $12,500.
I find the fair and reasonable cost to remove the UFFI from the Property to be $20,000.00.1 further find that the plaintiffs’ desire to have a state-certified UFFI removal specialist do the work is reasonable. State certification of UFFI removal contractors is necessary only if the contractor seeks payment under the UFFI Trust Fund. See 105 C.M.R. 651.009(2), (6). However, upon completion of the UFFI removal, such a contractor provides the homeowner with a certificate that removal has been' completed in accordance with the State’s UFFI removal regulations. Such a certification has significance to a seller, and a buyer, of a home that has previously had UFFI. Although there is no licensing requirement for UFFI removal contractors, only a state certified contractor can furnish a homeowner with a certificate that removal has been in accordance with procedures established by the State, and such a certificate is likely to have a significant positive impact on the value and marketability of a home.
Additionally, I find that the defendant’s contractor’s estimate to remove UFFI from the Property did not contemplate all the procedures required of a certified UFFI removal contractor, nor did it contemplate reinsulating the house or full exterior staining, items which the defendant’s president Edward Sciaba admitted were reasonable and which I find to be reasonable, and included in the plaintiffs’ expert’s estimate.
*299 Plaintiffs’ damages for negligent failure to disclose UFFI are $32,500.00.
C. Count III (Violation of G.L.c. 93A)
Regulations promulgated by the Attorney General under the authority of G.L.c. 93A, §2, declare the following to be unfair or deceptive trade practices:
(2) . . . failure] to disclose to a buyer . . . any fact, the disclosure of which may have influenced the buyer . . . not to enter into the transaction; or (3) . . . fail(ure) to comply with existing statutes . . . meant for the protection of the public’s health, safely, or welfare . . . intended to provide the consumers of this Commonwealth protection.
(940 C.M.R. 3.16(2), (3).)
The defendant conceded, and I find, that the failure to disclose the presence of UFFI in the Properly might have influenced the plaintiffs in their decision to purchase the Properly. 940 C.M.R. 3.16(2). I further find that the defendant did not know, but that it should have known about the presence of UFFI in the Properly. As discussed in Part B, infra, the defendant had a duly to ascertain the presence of UFFI. See G.L.c. 255, §121; 105 C.M.R. 651.010 et seq. I find that the presence of UFFI in the Properly was a material fact, being a toxic and hazardous substance, an irritant, and a banned hazardous substance. See 105 C.M.R 650.015, .016, .017, .020. I further find that the existence of UFFI in the Property was not disclosed to plaintiffs, and had it been disclosed it likely would have influenced them to not enter the transaction. See Slaney v. Westwood Auto, Inc., 366 Mass. 688, 702-03 (1975).
I also find that the failure to ascertain the existence of UFFI and disclose its presence to plaintiffs was a violation of G.L.c. 255, §12I (see Part B, infra), a statute intended “for the protection of the public’s health, safety, or welfare .. . [and] intended to provide the consumers of this Commonwealth protection.” 940 C.M.R. 3.16(3). See also 105 C.M.R. 651.010, et seq.
The more difficult question with respect to this Count is whether this transaction, an isolated sale of a residential dwelling try defendant, was within “trade or commerce” as those terms are used in G.L.C. 93A, §2. An isolated sale may come within “trade or commerce” for purpose of 93A if it occurred “in a business context.” Lantner v. Carson, 374 Mass. 606, 610-11 (1978). The “business context” standard does not mean that the “transaction must take place only in the ordinary course of a person’s business or occupation . . .” Begelfer v. Najarian, 381 Mass. 177, 191 (1980). Whether such a sale is within “trade or commerce” depends upon the circumstances of each case. Id. at 190-91.
In the case at bar, the defendant used the Properly in a business context and for specific business purposes. Its use eliminated defendant’s crew’s travel time from Boston to the work site on Cape Cod. Acquisition and maintenance costs of the Property were included as a project cost. Defendant’s president acknowledged, and I accept his testimony as true, that the purchase, use, and sale of the Property were motivated entirely by business concerns. Having no further business use for the Property, the defendant sold it. The defendant participated in the offer to sell the property, and at the sale itself. It determined the sale price. It listed the property with a broker for purposes of offering the Property to the public for sale. The defendant is a large public project contractor; the plaintiffs were “average” people looking to buy and enjoy a vacation home on Cape Cod. The sale of the Property by the defendant, being the disposal of a business asset, although non-typical, was a transaction that occurred in trade or commerce. See also Lynn v. Nashawaty, 12 Mass.App.Ct. 310 (1981).
I conclude that the defendant’s failure to disclose the presence of UFFI in the Property to the plaintiffs was a violation of G.L.c. 93A, §§2 and 9.1 further find that plaintiffs’ damages are $32,500.00, the same damages as under Count II.
The next question is whether plaintiffs are entitled to multiple damages. Such damages may be awarded for a knowing or willful violation of c. 93A. I find that the defendant’s failure to disclose the UFFI was not intentional or willful. I find that the defendant’s president acted honorably at all times material hereto, and that had he known of the UFFI, he probably would have disclosed its existence. The defendant’s own building inspector examined the Property when purchased by defendant, but discovered no UFFI. It is not known whether that person looked for UFFI. The plaintiffs hired someone to inspect the Properly prior to purchase, but no UFFI was found; and again, it is not known whether that person looked for UFFI. There was no evidence of any reckless disregard for the rights of the plaintiffs on the part of the defendant.
A failure to make a reasonable and timely offer of settlement may also give rise to multiple damages. The original demand letter was not sufficiently detailed so as to give defendant a basis on which to make a reasonable tender of settlement. See York v. Sullivan, 369 Mass. 157, 162 (1975); Brandt v. Olympic Construction, Inc., 16 Mass.App.Ct. 913, 915 (1983). The defendant’s response was timely. G.L.c. 93A, §9. The demand did not specify the location or the extent of the UFFI. The defendant subsequently offered to remove the UFFI and pay attorney fees at a cost of $14,000. It did not provide for reinsulation, or staining of the entire exterior of the Property, or that certain venting techniques would be used during the removal process. It further failed to arrange to have the work done by a state certified UFFI removal contractor (a reasonable request by plaintiffs, as discussed in Part B, infra). I find that the defendant did not make a reasonable settlement offer, but that the defendant did not act in bad faith in responding to the demand letter. For these reasons, an award of multiple damages is not warranted in this case. G.L.c. 93A, §9(3).
*300 The plaintiffs are entitled to a reasonable attorneys fee, to be established at a later date.
For the reasons set forth herein, judgment for the defendant is to enter on Count I, and judgment for the plaintiffs is to enter on Counts II and III in the amount of $32,500, together with attorneys fees on Count III, to be established at a later date. Since the damages awarded under Counts II and III are duplicitous (except as to attorneys fees under Count III), execution will issue for a single sum of $32,500.00.