Fabricant, J.
Introduction
This action arises from a collision that occurred on September 4, 1993, between two motor vehicles, one operated by Phillip Quillard, the other operated by Jennifer Snider. The complaint alleges that Kathleen Quillard, Phillip’s wife and passenger, suffered serious personal injuries, and that Phillip and the couple’s two children suffered loss of consortium. The complaint names as defendants Jennifer Snider and her mother, Eileen, owner of the vehicle operated by Jennifer. The complaint also names Eileen Snider’s insurer, Safety Insurance Company, asserting against Safety claims for breach of contract (Count IV)[1] and for unfair settlement practices in violation of G.L.c. 176D, §3(9) and G.L.c. 93A, §9(3) (Count V). It is the plaintiffs’ claims against Safety that are the subject of the present cross-motions for summary judgment.
Facts
The facts material to these claims appear to undisputed. At the time of the collision, the Quillard vehicle was stopped on Route 39 in Brewster, waiting to make a' left turn onto a cross street. Jennifer Snider, age 18, was traveling on Route 39 behind the Quillard vehicle, and hit the Quillard vehicle from the rear. A Brewster police officer, upon investigation at the scene, cited Jennifer for Failure to Use Care in Stopping, and she was subsequently found responsible for that infraction. Jennifer’s mother, Eileen, owner of the motor vehicle Jennifer was driving, held a policy of insurance issued by Safety, with coverage limited to $20,000 per person and $40,000 per incident. Jennifer was a member of Eileen’s household and a named insured under the policy, and was operating the vehicle with Eileen’s permission.[2] The policy followed the form of the “Sixth Edition" standard Automobile Insurance Policy, as approved by the Massachusetts Commissioner of Insurance. The Sixth Edition policy contains a provision, numbered paragraph 2 of part 24, entitled “Our Duty to Defend You and Our Right to Settle,” which reads as follows:
We have the right to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. We also have a duty to defend any lawsuit, but our duty to defend ends when we offer, tender, or pay to any claimant the maximum limits of coverage under this policy. We may end our duty to defend at any time during the course of the lawsuit, by offering, tendering, or paying the maximum limits of coverage under the policy, without the need for a judgment or settlement of the lawsuit or a release by the claimant.
On June 16, 1995, the plaintiffs’ counsel sent Safety a demand for settlement of Kathleen Quillard’s claim in the amount of $20,000, the policy limit. Counsel supported her demand with a case evaluation package, including documentation of medical expenses and lost income totaling some $49,000. Safety’s adjuster responded on July 12, 1995, indicating that she had forwarded the documentation for a medical file review. On September 6, 1995, presumably having received the results of that review, the adjuster spoke with plaintiffs counsel by telephone and offered $20,000 in full settlement, on the condition that plaintiffs execute a release of Safety’s insureds, Jennifer and Eileen Snider. It is Safety’s imposition of that condition that the plaintiffs contend violates Safety’s statutory and contractual duties. *74 Plaintiffs’ counsel asserted that contention in a demand letter under G.L.c. 93A, dated September 7, 1995, to which Safety responded by letter dated September 22, 1995, setting forth its legal theory under which it was entitled, and possibly obligated, to demand a release in the circumstances, and reiterating its previous offer. Plaintiffs filed this suit on November 15, 1995.
The Applicable Legal Standards
Summary judgment is to be granted where there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). Here, the parties agree to the facts as recited. Each side contends that those facts are sufficient for judgment in its favor on its legal theory; defendant Safety contends that, should the Court reject its reading of the law and adopt the plaintiffs’, judgment cannot enter because certain additional facts that would be material are in dispute. This Court concludes that the facts as recited are all the facts that are material to Counts IV and V of the complaint, that Safety is entitled to judgment as a matter of law on Count IV, and that the plaintiffs are entitled to judgment as a matter of law on Count V. This memorandum will address these counts in reverse order.
Count V
The legal issue on which the parties disagree is the application to these facts of Thaler v. The American Insurance Company, 34 Mass.App.Ct. 639 (1993). There the Appeals Court held that “henceforth the insistence on a release by an insurer as a condition of payment of the policy limits where liability of its insured is undisputed and damages clearly exceed the policy limits amounts to an unfair settlement practice.” The plaintiffs say that Thaler is on all fours. Safety contends that this case differs from Thaler in three ways: first, Safety says that liability is not undisputed; second Safety says that damages in this case do not clearly exceed the policy limits; and third, Safety says that the Thaler rule does not apply to the Sixth Edition policy. Safety’s argument that liability is not undisputed must be considered in relation to each insured. As to Jennifer, Safety points out that her answer, filed by her separate counsel[3] in this case, denies liability, and that it has never explicitly conceded her liability. Beyond that, however, Safety points to no factual basis on which it could seriously dispute Jennifer’s liability,[4] and none is apparent. It cannot be that “undisputed” for purposes of Thaler requires an explicit concession of liability; if that were so, it is difficult to imagine that the rule would ever apply in practice. “Undisputed” must mean not in genuine dispute. In light of the facts of the accident involved here, and Safety’s offer to settle for $20,000, this Court concludes that Safety does not genuinely dispute Jennifer’s liability.[5]
As to Eileen, it seems clear that there is a genuine dispute. Safety points out that Eileen would be liable for Jennifer’s negligence only if Jennifer was acting on her behalf, which Safety contends she was not. Safety-further contends that a dispute as to the liability of one of its two insureds is sufficient to take the case outside the Thaler rule. In Thaler, as here, there were two insureds, the driver and his mother, who had leased the vehicle and allowed her son to drive. In reciting the facts, the Appeals Court said that the insurance company had “conclud[ed] that liability was not in question.” 34 Mass.App.Ct. at 640. Safety reads this as indicating that the insurance company there had conceded liability as to each of its insureds, and that the rule announced by the Courtis limited to such situations. In light of the rationale for the rule, this Court rejects this reading.
The Appeals Court in Thaler based its ruling on the statutory mandate of G.L.c. 176D, §3(9)(f), which requires insurers “to effectuate prompt, fair and equitable settlements of claims.” The Court read that statute as requiring an insurer to make prompt payment when it is clear that payment is due, rather than forcing claimants to litigate to obtain payment. Id. At 643. Thus, the relevant inquiry to determine whether the rule established in Thaler applies is not whether the liability of each and every insured is clear, but whether it is clear that payment is due under the policy. For that purpose, it is sufficient that the liability of one insured, Jennifer, is not in genuine dispute.
As to the amount of damages, Safety again relies on the absence of any explicit concession on its part. Here again, this Court reads Thaler as establishing a rule that applies in the absence of a genuine dispute, not just in the absence of a formal dispute. The fact that Safety’s first and only settlement offer was in the amount of the policy limit establishes the absence of a genuine dispute that damages would exceed that figure.
Safety’s final theory is that Thaler does not apply to Sixth Edition policies. In support of this theory, Safety notes that the Court in Thaler cited Aetna Cas. & Sur. Co. v. Sullivan, 33 Mass.App.Ct. 154, 157 (1992), which construed earlier policy language as imposing on an insurer a continuing duty to defend the insured, even after payment of the policy limit, unless the payment was in full satisfaction of the claim of at least one claimant. Safety points out that the Thaler Court noted Aetna as a reason that a reasonable insured would not expect that its insurer would be required to obtain a release before paying out the policy limit. From this Safety reasons that the rule announced in Thaler depends on the existence of the continuing duty to defend that Aetna had held to exist, that no such duty exists under the Sixth Edition, and that therefore Thaler does not apply.
This theory misconstrues Thaler. The Thaler Court based its analysis on consideration of the expectations *75 of a reasonable insured with respect to whether the insurer would insist on a release before paying out the policy limit. Those expectations were important in determining the scope of the insurer’s obligation to the insured under the implied covenant of good faith and fair dealing. 34 Mass.App.Ct. at 642. The Thaler Court noted the existence of a continuing duty to defend, under the edition of the policy that was involved there, as one of several factors indicating that a reasonable insured would not expect the insurer to insist on a release. Since the insured would not so expect, insistence on a release was not within the insurer’s duly to the insured, and therefore was in violation of the insurer’s statutory duty to the claimant. The basis of the Thaler rule, however, was not the existence of a continuing duty to defend, but the reasonable expectation of the insured.
Under the Sixth Edition policy, no reasonable insured could have any expectation that the insurer would insist on a release, since the policy language unequivocally says that the insurer need not do so. Thus, the rule of Thaler applies a fortiori. Indeed, the Appeals Court in Thaler said as much. Noting that the standard policy language had changed since Aetna so as to eliminate the continuing duty to defend recognized there, the Court said:
The change does not affect the result reached in this case, for it does not apply to any policy issued before January 1, 1993. For those policies issued thereafter, an insured would no longer have any reasonable expectation under the language of his or her policy to expect that the insurer would be required to obtain a release before paying out the maximum policy limits.
34 Mass.App.Ct. at 641, n.3. Thus, Safety’s insistence on a release in this case violated the rule announced in Thaler.
Safety argues that even if it has misconstrued Thaler, it has done so in good faith reliance on advice of counsel, and is therefore not liable under c. 93A. The record before this Courtis consistent with Safety’s claim of good faith, and is inconsistent with a willful or knowing violation. Safety responded to the plaintiffs’ settlement demand promptly, and offered the policy limit. In considering whether to demand a release, it was faced with a set of facts that differed from Thaler in ways that, although this Court has found immaterial to application of the Thaler rule, Safety could reasonably have thought to pose some risk that compliance with that rule would lead to liability to the insureds.[6] Moreover, the position Safety has taken here is of no benefit to Safety; it must pay the policy limit either way. Only Safety’s insured would stand to benefit from Safety’s conduct. Finally, once litigation commenced Safety moved promptly to put the issue of the application of Thaler before the Court. These facts indicate that Safety acted not out of any self-interest or motive to deny a legitimate claim, but out of a genuine uncertainty as to its obligations, concern that it fully meet its obligations to insureds, and fear of potential liability to its insureds. Under the circumstances, this Court concludes that Safety has violated G.L.c. 176D, §3(9) and G.L.c. 93A, §9(2), but that its violation was not willful or knowing, and that its response to the plaintiffs’ c. 93A demand was not in bad faith. Accordingly, the plaintiffs are entitled to judgment on Count V, but shall be awarded only their actual damages or the nominal damages provided by c. 93A, §9(3), not multiple damages.
Count IV
Although Safety’s conduct violated its statutory duties to the plaintiffs, it did not violate any rights they derive as third party beneficiaries to the contract of insurance between Safely and its insureds. The conduct of which plaintiffs complain, Safety’s effort to obtain a release from plaintiffs of their claims against Safety’s insureds, was fully in accord with the interests of the insureds. Thaler establishes that the insureds had no contractual right to require or to expect Safety to conduct itself in that way, and that in the absence of such a right, G.L.c. 176D, §3(9) and G.L.c. 93A, §9(2), prohibit an insurer from doing so. That does not establish, however, that the contract itself prohibits the conduct complained of, nor do the plaintiffs point to any language in the contract that they contend has that effect. Indeed it would appear highly improbable that a contract would give rise to a duty of the insurer to act in a manner so directly in conflict with the interests of the insured. Accordingly, the Court concludes that Safety is entitled to judgment as a matter of law on Count IV.
Conclusion
For the reasons stated, Safety’s Motion for Summary Judgment is allowed as to Count IV, and Plaintiffs’ Motion for Summary Judgment is allowed as to Count V, with plaintiffs to be awarded damages against Safety in the amount of their actual damages or the nominal damages provided by c. 93A, §9(3), whichever is greater.

 The theory underlying the breach of contract claim appears to be that the Quillards are third party beneficiaries of the insurance contract between Safety and Eileen Snider, and on that basis are entitled to recover for Safety’s alleged breach of an implied duty of good faith and fair dealing under that contract.

 Eileen and Safety assert that Jennifer was not operating the vehicle for Eileen’s benefit or as her agent. It is unclear at this stage whether plaintiffs contend that she was, but as will become apparent, that factual issue is not material to the questions now before the Court.

 Safety is providing counsel in defense of its insureds in this action.

 At oral argument on the cross-motions for summaiy judgment, plaintiffs’ counsel asserted, and defendants’ counsel acknowledged, that Safety had imposed a merit rating surcharge on Jennifer based on this accident, that Jennifer had unsuccessfully contested the surcharge at the administrative level pursuant to G.L.c. 175, §113P, and that she had not exercised her right to judicial review under that statute.

 This is not to suggest that Jennifer is precluded from contesting her own liability; no issue is before the Court at this stage as to any theory of preclusion against Jennifer.

 Although this Court does not read Hartford Cas. Ins. Co. v. New Hampshire Cas. Co., 417 Mass. 15 (1994), as casting doubt on the validity of the rule established in Thaler, or its application to this case, Safety could reasonably have considered that decision in evaluating its risk of liability to its insured if it were to misconstrue its obligations in this situation.