King, J.
Plaintiff Stephen Bruning (Bruning) brought this action to recover for damages sustained in a motor vehicle accident which occurred on February 3, 1993. On December 27, 1996, the court allowed Bruning’s motion for partial summary judgment as to liability on his G.L.c. 93A, §9 claim against defendant Safety Insurance Company (Safety). Bruning now moves for an assessment of damages on his chapter 93A claim. Safety moves for reconsideration with respect to multiple damages.[2] After hearing and considering the arguments of counsel, the court will allow Bruning’s motion and deny Safety’s motion for the reasons set forth below.
BACKGROUND
On February 3, 1993, Stephen Bruning was operating a vehicle in West Roxbury, Massachusetts, when he was struck by a taxi cab operated by defendant Allen Welch (Welch), traveling on the wrong side of the road. The taxi operated by Welch was owned by defendant Thomas White (White) and was insured by Safety. Safety’s policy has a maximum per person liability coverage of $15,000. As a result of the injuries sustained by Bruning, he has incurred over $15,000 in medical bills. Safety concedes that Welch is an “insured” under White’s auto insurance policy. There are material issues of fact as to White’s liability to Bruning.
On September 14, 1993, Bruning sent a formal demand letter to Safety, pursuant to G.L.c. 93A, §9. Bruning sent a second demand letter to Safety on September 12, 1995, in order to be certain that the basis of Safety’s liability was clear. On October 20, 1995, Bruning filed suit against Safety, Welch, and White individually and doing business under the name Mew, Inc. or Forest Hills Independent Taxi Service, alleging, among other things, that Safety failed to effectuate a prompt settlement under White’s automobile insurance policy in violation of G.L.c. 93A. In a letter dated October 8, 1993, Safety offered to pay Bruning the policy limit of $15,000, on the condition that he execute a release of all claims against White. Safety did not ask for a release of all claims against Welch. This action was filed after Safety refused to pay the policy limits to Bruning unless he released White. Six months after the case was filed, Safety filed a motion to deposit the policy limits ($15,000) with the court. That motion was allowed.
On December 27, 1996, the court denied Safety’s motion for summary judgment and allowed plaintiffs cross-motion for partial summary judgment [6 Mass. L. Rptr. No. 14, 290 (March 3, 1997)]. The court found that Safety had failed to provide a prompt payment of insurance proceeds in violation of G.L.c. 176D and G.L.c. 93A, §§2 and 9, and that “Safety’s refusal to grant relief in response to the plaintiffs demand letter was made in bad faith with knowledge or reason to know that its complained of conduct violated . . . chapter 93A.”
Safety has moved for reconsideration of the court’s decision that multiple damages should be awarded. Plaintiff has moved for an assessment of damages, including interest and attorneys fees.
MOTION FOR RECONSIDERATION
Defendant Safety asks the court to reconsider its award of multiple damages and attorney’s fees on the ground that the record does not support the court’s conclusion that Safety acted in bad faith. In support of its motion for reconsideration, Safety directs the court’s attention to several recent Superior Court decisions, in which other Justices of the Superior Court have found that refusal to pay the limits of a policy, in circumstances somewhat similar to those presented here, has been found not to be a “willful or knowing violation” of G.L.c. 93A. See Quillard v. Safety Insurance Co., C.A. No. 95-2526, 6 Mass. L. Rptr. 73 (Norfolk Superior Court Oct. 29, 1996), Lentini v. Peart, C.A. No. 94-1284, 6 Mass. L. Rptr. 214 (Norfolk Superior Court Nov. 25, 1996).
In the other Superior Court cases, the court found that there was no bad faith involved in the insurers’ decisions to require a release before they paid out the amount of the policies because the insurers had a genuine uncertainty about their liability to their insureds if they paid out the policy limits. See Lentini, supra, at 7-8; Quillard, supra, at 9-10. The court found that the insurers were not liable for a willful and knowing violation of c. 93A because their actions arose *231 from a good faith, albeit faulty, reading of the rule articulated in Thaler v. American Ins. Co., 34 Mass.App.Ct. 639 (1993). The court further found, in each of the cases cited by Safety, that the defendant insurers did not act out of any self-interest or motive to deny a legitimate claim, because only the insureds could benefit from the position taken by the insurers. See Lentini, supra, at 7-8; Quillard, supra, at 9-10.
Even assuming that the cases cited by Safety were correctly decided, the instant case is distinguishable from those cases. The policy issued to White was a commercial policy, which imposed upon Safety the duty to defend White even after the limits of the policy had been paid out. Safety would thus realize a benefit from requiring Bruning to execute a release in favor of White before it paid out the limits of the policy, as it would no longer be required to defend White if he obtained a release from Bruning. As previously noted by this court, Safety continued to require a release of White even in the face of Bruning’s two demand letters which set forth Safety’s clear liability under Thaler. Moreover, after learning of the court’s decisions in Quillard and Lentini, Safety continued to refuse to pay unless Bruning relented to Safety’s release demand. See Clegg v. Butler, 424 Mass. 413, 420-23 (1997). Indeed, as recently as the hearing on Safety’s motion to reconsider, Safety refused to pay to Bruning the $15,000 deposited with the court. On the facts of this case; the court’s finding that Safely acted in bad faith knowing that its conduct violated chapter 93A was warranted. The court will award treble damages in order to discourage Safety from continuing its policy of refusing to make payment on its policies where liability and damages are reasonably clear.
ASSESSMENT OF DAMAGES
Plaintiff has filed a motion for assessment of damages including interest and attorneys fees. Plaintiff shall be awarded three times the full amount of the policy plus appropriate interest and attorneys fees.
Interest
Interest is calculated upon that portion of the plaintiff s damages for which the defendant is responsible, here, the full amount of the policy, $15,000. Interest upon that amount is calculated from the time the defendant knew or had reason to know that it was liable under the insurance policy. Cohen v. Liberty Mutual Insurance Co., 41 Mass.App.Ct. 748, 750, 751 and 756 (1996).[3] An award of multiple damages includes not only a multiplication of the actual award, but also of the interest on that award. Id.
Safety argues that even if Bruning is entitled to interest, that interest should be calculated at twelve percent only from the date of the institution of the lawsuit (October 20, 1995); Safety argues that the interest from the date of the first response to plaintiffs initial demand letter (October 8, 1993) until the commencement of the lawsuit should be only six percent, pursuant to G.L.c. 107, §3, which provides for interest at six percent where no other amount is specified by law.
The policy behind the award of interest in cases of unfair or deceptive trade practices is to make the plaintiff whole and to compensate the plaintiff for the loss of the use of the money. See Cohen, 41 Mass.App.Ct. at 755-56. While chapter 93Ais an independent cause of action and does not sound either in tort or in contract, it appears that the policy of making the plaintiff whole is best served by analogizing this case to an action on an insurance contract, which would be governed by G.L.c. 231, §6C. In actions governed by this statute, interest normally accrues at twelve percent from the time of the demand, which in this case would be the September 14, 1993 demand letter. However, since the unfair and deceptive trade practice occurred on October 8, 1993, when Safety insisted on a release of White, it is appropriate to assess interest as of that date. Id. at 750, 751 and 756.
Attorneys Fees
The plaintiff is entitled to recover a reasonable award of attorneys fees pursuant to G.L.c. 93A, §9. A defendant found to be responsible for attorney’s fees under chapter 93A is only liable for that portion of the attorney’s fees which represents work connected with the 93A claim. Miller v. Risk Management Found. of Harvard Medical Institutions, Inc., 36 Mass.App.Ct. 411, 422 (1994).
The court has reviewed the record in this case including attorney Koditek’s supporting affidavit.[4] Although the assessment of a reasonable award of attorney’s fees is largely discretionary, some of the factors that should be taken into consideration are “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by attorneys in the area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), citing Darmetko v. Boston Housing Authority, 378 Mass. 758, 763-64 (1979). The court has considered these factors to the extent there is information before the court on these factors. Attorney Koditek was admitted to practice in the Commonwealth of Massachusetts in 1980. Since 1980, his practice has concentrated on personal injury litigation. The amount of time he spent on the chapter 93A claim was reasonable. Compensation at the rate of $ 175 is reasonable given attorney Koditek’s experience and the complexity of the chapter 93A issue raised in this case. I find that his request for costs is reasonable. The court will award to the plaintiff $12,302.50 in attorneys fees and $202.97 in costs.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
*232 1. Defendant’s motion for reconsideration of award of damages is DENIED.
2. Judgment shall enter on the G.L.c. 93A claim against Safety Insurance Company in the amount of $45,000, which represents three times the amount of the policy, plus three times the interest calculated at twelve percent from October 8, 1993, to the date of entry of final judgment, attorneys fees of $12,302.50 and costs of $202.97.

 The trial of the negligence claims against White and Welch is scheduled for September 22, 1997.

 In Cohen, the plaintiff obtained a default judgment against Liberty Mutual’s insured. Liberty Mutual initially disputed that it had an insurance policy covering the accident. On August 7, 1990, it received confirmation that it had such a policy. Nonetheless, Liberty Mutual refused to pay the judgment. The court found that Liberty Mutual’s violation of G.L.c. 93A first occurred on August 7, 1990 and calculated interest on the judgment from that date.

 In plaintiffs original affidavit in support of the requested award of attorneys fees, counsel did not isolate the time devoted to the chapter 93A claim and sought compensation for all the time he spent on the case. At the direction of the court, counsel submitted a “second supplemental affidavit” in which he separated out the time spent on the chapter 93A claim. The court will not award any fees for the time spent on the other claims in this case.